Robert C. McDIARMID, Appellant,

v.

Ruth McDIARMID, Appellee.

No. 92–FM–925.

District of Columbia Court of Appeals.

Argued Jan. 5, 1994.
Decided Oct. 24, 1994.

Peter R. Sherman, with whom Claudia A. Pott, was on the brief, for appellant.

Pamela B. Forbes, with whom Marna S. Tucker and Mary G. Hynes, were on the brief, for appellee.

Before TERRY, KING, and SULLIVAN, Associate Judges.

SULLIVAN, Associate Judge:

This case is before the court for the second time. In the first appeal, *McDiarmid v. McDiarmid*, 594 A.2d 79 (D.C.1991) (*McDiarmid I*), a division of this court concluded that an order entered December 22, 1988 by Judge Sylvia Bacon, the first trial judge, granting appellee's complaint for absolute divorce, awarding her alimony, child support, and joint custody of the parties' minor child, and establishing values on marital assets subject to distribution, was not final and therefore not appealable. Accordingly, the court dismissed the appeal for want of jurisdiction. *Id.* Pending before the court now is an appeal from an order entered July 10, 1992 by Judge Henry F. Greene, the second trial judge, (1) granting appellee's motion for entry of judgment based on Judge Bacon's order of December 22, 1988, and (2) awarding attorney fees to appellee. In view of the finality of Judge Greene's order, we now review the issues raised by appellant in *McDiarmid I*, as well as Judge Greene's award of attorney fees to appellee. We affirm in part, reverse in part, and remand for further proceedings.

**I**

The parties to this action were married on December 22, 1963. They separated in late 1985, and, in July of 1986, appellee filed a complaint seeking an absolute divorce, alimony, custody, child support and distribution of property. At the trial before Judge Bacon in July 1987, the parties stipulated to the identity and value of some marital and non-marital assets, as well as to the custody of their two children and responsibility for various expenses related to them. The contested issues included whether appellee should be awarded additional child support and alimony, whether she was entitled to a share of appellant's interest in his family partnership, McDiarmid Associates, which interest was gifted to him during the marriage, and the value of appellant's law firm partnership interest. The divorce was not otherwise contested.

On December 22, 1988, seventeen months after the trial had concluded, Judge Bacon entered Findings of Fact, Conclusions of Law and a Judgment of Absolute Divorce. Judge Bacon concluded that appellant's law firm partnership interest had a value of $428,197, including a goodwill value of $63,824; that appellant's "retained earnings" in his family partnership (but not the partner-

ship interest itself) were marital property valued at $71,180; that appellee was entitled to alimony of $1,000 per month; and that she was entitled to additional child support of $500 per month for the younger child, retroactive to the date of the filing of the complaint. Judge Bacon concluded that the marital property should be divided equally between the parties and suggested that this be accomplished by awarding appellant his law firm interest, including goodwill, retirement plans, and "retained earnings" and awarding the balance of the parties' assets, including the marital home, to appellee. This distribution plan was *suggested*, but not ordered, by Judge Bacon, who retained jurisdiction over the case in the event the parties were unable to agree upon a distribution of assets.

On January 4, 1989, appellant filed a motion to reconsider and amend Judge Bacon's Findings of Fact and Conclusions of Law due to what he maintained were "substantial changes in the circumstances relating to marital property" during the eighteen months between the trial and the court's decision, in particular, the value of the marital home. Appellant averred that the value of the marital home had increased in value and presented a current appraisal ("Kidwell appraisal") of the marital home which appellant argued reflected appreciation of that property in excess of $200,000 in the interval between trial and Judge Bacon's decision. The parties' attorneys attempted to work out a settlement and agreed that no opposition to appellant's motion would be filed during settlement negotiations. Unfortunately, the parties' efforts at settlement were unsuccessful, and appellee filed her opposition to the motion for reconsideration on June 30, 1989. Six months later, on December 15, 1989, Judge Bacon issued an order stating that she would consider the Kidwell appraisal for the limited purpose of showing one opinion on the change in value of the marital home. On that same day, she also issued an order denying appellant's motion to reconsider and amend her Findings of Fact, Conclusions of Law and Judgment of Absolute Divorce.

Appellant appealed Judge Bacon's order; following our dismissal of the appeal in *McDiarmid I, supra*, appellee filed a motion

in the trial court for entry of judgment of Judge Bacon's order. In view of Judge Bacon's intervening retirement, the case was reassigned to Judge Henry F. Greene, who ordered the specific property distribution suggested by Judge Bacon, entered judgment based upon Judge Bacon's Findings of Fact and Conclusions of Law, and awarded attorney's fees to appellee in the amount of $65,318. The present appeal ensued.

## II.

The first issue to be addressed is whether the trial court abused its discretion in failing to revalue certain marital assets when a specific proffer was made by appellant that the substantial passage of time after trial, and before decision, had resulted in substantial fluctuations in the values of those assets. The law in the District of Columbia does not specify the valuation date to be utilized by a trial court for the valuation of marital property subject to distribution upon the entry of a divorce decree. Moreover, D.C.Code § 16–910 (1989) does not impose a duty on a trial court to distribute marital and separate property within a prescribed period after the trial court receives evidence of its value. The statute does, however, require the trial court to distribute all property accumulated during marriage "in a manner that is equitable, just and reasonable." *Id.*

The Supreme Court of Pennsylvania, in *Sutliff v. Sutliff*, 518 Pa. 378, 543 A.2d 534 (1988), interpreting its divorce statute, 23 Pa.Cons.Stat.Ann. § 3502 (1993), which contains no express provision governing the proper date for valuation of marital property subject to equitable distribution, held that it was "implicit ... in the statutory provisions governing equitable distribution that a valuation date reasonably proximate to the date of distribution must, in the usual case, be utilized." *Sutliff, supra*, 543 A.2d at 536. The Pennsylvania statute, with its enumeration of factors to be considered in distributing marital property, is virtually identical to D.C.Code § 16–910 in both language and spirit. Examining the language of the statute, the Pennsylvania court held that "it is inconceivable that the requirement that the distribution be made in such proportions as

the court deems 'just' could be satisfied without reference to the current values of the assets." *Id.* Remanding the case for determination of revised asset valuation, the court concluded that

> [t]o distribute property without regard to [market] fluctuations would be illogical, and would undermine the legislative intent of making the equitable distribution process responsive to the contemporaneous needs and financial situations of the parties.

*Id.* 543 A.2d at 537; *see also Malseed v. Malseed,* 388 Pa.Super. 214, 565 A.2d 453, 455 (1989) (trial court erred in not basing the equitable distribution upon the market value of the marital home *at the time of distribution* ).

■■■■ We find the rationale of the Pennsylvania court persuasive. The distribution of property upon dissolution of marriage should be responsive to the parties' then current needs and circumstances. An equitable distribution requires the court to consider the current values of the marital property, such that upon distribution, each party's needs are adequately addressed. We recognize that it is within the trial court's discretion to "adopt a date for valuation which best works economic justice between the parties." *McNaughton v. McNaughton,* 412 Pa.Super. 409, 603 A.2d 646, 649 (1992). Thus, we do not endeavor to establish as a matter of law a valuation date to be used in every situation. Nonetheless, there are circumstances in which the distribution of assets based on stale valuations violates the provisions of D.C.Code § 16–910, requiring that the distribution be equitable, just and reasonable. The case before us today presents such a circumstance.

For instance, at the trial in 1987, the value of the marital home that is the subject of this appeal was stipulated by the parties to be $320,000. Appellant's appraiser, Robert Kidwell, performed an updated appraisal of the property in 1989 and concluded that it was worth $565,000. This appraisal report, *which was not controverted by appellee,* was submitted to Judge Bacon in appellant's motion for reconsideration. Although appellant requested a hearing on his motion to revalue

the marital assets, that request was denied, as was his motion.

In these circumstances, where more than an insubstantial period of time has elapsed between a trial and the entry of a court order valuing and distributing marital property, the trial judge's refusal to revalue marital assets, after an uncontroverted proffer was made to the trial judge that the marital assets had materially changed in value since the trial, was an abuse of discretion. Ignoring the most current value of the marital home, *inter alia,* which arguably had increased dramatically from 1987 through at least 1989, and distributing that property according to a stale valuation, rendered the court's distribution scheme irresponsive to the *then* current needs and financial circumstances of the parties. We, therefore, reverse the trial court's findings on this issue and remand for further consideration the appropriate valuation of the marital assets of the parties.

### III.

■■■■ Appellant's second major argument on appeal is that the trial court erred in valuing his partnership interest in the law firm of Spiegel & McDiarmid. Appellant argues primarily that professional goodwill is not marital property. In the alternative, he contends that if professional goodwill is marital property, the trial court erred in valuing goodwill in this case, contrary to the terms of the partnership agreement and actual transfers between the law partners.

Goodwill has been defined as:

> [T]he advantage or benefit, which is acquired by an establishment, beyond the mere value of the capital stock, funds, or property employed therein, in consequence of general public patronage and encouragement, which it receives from constant or habitual customers, on account of its local position, or common celebrity, or reputation for skill or affluence, or punctuality, or from other accidental circumstances or necessities, or even from ancient partialities or prejudices.

J. STORY, COMMENTARIES ON THE LAW OF PARTNERSHIPS § 99, at 170 (6th ed. 1868), *as quoted in* RUTKIN ET AL., VALUATION AND DISTRIBU-

TION OF MARITAL PROPERTY § 23.05, at 23–64 (1992).

As the District of Columbia has not heretofore addressed the question of whether professional goodwill is subject to distribution upon dissolution of marriage, we have examined the cases of our sister jurisdictions and considered how they have addressed and resolved this issue. We found that "[t]here is no specific consensus as to a definition of professional goodwill, whether a sole practitioner of any profession can have goodwill, or what method or methods should be used to value professional goodwill." *Thompson v. Thompson,* 576 So.2d 267, 269 (Fla.1991).

The jurisdictions are divided as to whether professional goodwill in a law practice may be marital property subject to distribution upon dissolution of marriage. A number of courts have concluded that professional goodwill in a law practice is not property subject to equitable distribution. These courts have concluded that the concept of goodwill is indistinguishable from future earning capacity and thus too remote and speculative to be valued. *See Richmond v. Richmond,* 779 P.2d 1211 (Alaska 1989) (professional goodwill of husband, an attorney, was unmarketable and therefore not marital property subject to distribution); *Prahinski v. Prahinski,* 321 Md. 227, 582 A.2d 784 (1990) (professional goodwill of attorney-husband, sole practitioner, is personal to him and is not the kind of asset which can be divided as marital property); *Travis v. Travis,* 795 P.2d 96 (Okla.1990) (sole practitioner's law practice had no goodwill value for purpose of dividing marital estate); *Beasley v. Beasley,* 359 Pa.Super. 20, 518 A.2d 545 (1986) (goodwill of sole practitioner's law practice was not marital property subject to distribution), *allocatur denied,* 516 Pa. 631, 533 A.2d 90 (1987); *Smith v. Smith,* 709 S.W.2d 588 (Tenn.Ct. App.1985) (goodwill of husband's law firm partnership is not marital property subject to distribution). The rationale behind these cases is articulated clearly in *Holbrook v. Holbrook,* 103 Wis.2d 327, 309 N.W.2d 343, 354 (App.1981) which held:

> [t]he concept of professional goodwill evanesces when one attempts to distinguish it from future earning capacity. Although a

professional business's good reputation, which is essentially what its goodwill consists of, is certainly a thing of value, we do not believe that it bestows on those who have an ownership interest in the business, an actual, separate property interest.

A majority of the jurisdictions has concluded, however, that professional goodwill is marital property subject to equitable distribution. These courts classify goodwill as marital property because "[t]o hold otherwise would result in a windfall to the professional spouse." *Russell v. Russell,* 11 Va.App. 411, 399 S.E.2d 166, 168 (1990). We adopt the majority view that goodwill of a professional practice acquired during a marriage is marital property subject to valuation and distribution. To achieve an equitable distribution of marital property, a court must consider the contributions each spouse may have made to the tangible and intangible assets of the professional practice. *See In Re Marriage of Huff,* 834 P.2d 244 (Colo.1992) (en banc) (recognizing goodwill of husband's law firm partnership as marital property of which wife was entitled an equitable share); *Thompson, supra,* 576 So.2d at 267 (court should consider the goodwill of a law practice as a marital asset if the law practice has monetary value over and above its tangible assets and that value is separate from the reputation of an individual); *Dugan v. Dugan,* 92 N.J. 423, 457 A.2d 1 (1983) (attorney's goodwill in his exclusively owned professional corporation is property subject to equitable distribution upon divorce), and cases cited therein. *In Re Marriage of Brooks,* 51 Wash.App. 882, 756 P.2d 161 (1988) (spouse's goodwill in law firm, in which he was a partner, was community property, subject to equitable distribution following dissolution of marriage).

We also recognize, however, that "under the facts of a given case, a professional practice may have no goodwill value," *Russell, supra,* 399 S.E.2d at 169, and that a case-by-case inquiry into valuation is preferable in these cases. Thus, we next consider whether the trial court erred in valuing the goodwill of appellant's law practice at $63,824.

As the court in *Dugan, supra,* aptly noted, "[g]oodwill should be valued with great care, for the individual practitioner will be forced to pay the ex-spouse 'tangible' dollars for an intangible asset at a value concededly arrived at on the basis of some uncertain elements." 457 A.2d at 7. The value of appellant's interest in his law firm was specified in the Spiegel & McDiarmid Partnership Agreement ("partnership agreement"). The partnership agreement in force at the time of trial, as well as every prior agreement dating to the firm's formation, prohibited partners from receiving payment for goodwill upon withdrawal, retirement, disability, death or the firm's dissolution. Indeed, no payment for goodwill was made in all the prior transfers of partnership interests in Spiegel & McDiarmid. Nonetheless, the trial judge, finding the terms of the partnership agreement merely "of help" in valuing appellant's partnership share, concluded that the value of the goodwill attributable to appellant's share in Spiegel & McDiarmid was $63,824.

 We recognize that there are a variety of acceptable methods of valuing the goodwill of a professional practice, and no single method is to be preferred as a matter of law. *Russell, supra,* 399 S.E.2d at 169. The selection of a valuation method is within the discretion of the trial judge. *See id.* ("on appeal, the trial court's valuation of goodwill will not be disturbed if it appears that the court made a reasonable approximation of the goodwill value, if any, of the professional practice based on competent evidence and the use of a sound method supported by that evidence") (citation omitted); *see also Clark v. Clark,* 782 S.W.2d 56, 60 (Ky.Ct.App.1990) ("trial court's valuation of goodwill should not be disturbed if it appears reasonable"). However, the method must be reasonable, sound and supported by the evidence. *See In Re Marriage of Hall,* 103 Wash.2d 236, 692 P.2d 175, 180 (1984) (en banc) ("[v]aluation of goodwill is a question of fact, [and f]indings of fact supported by substantial evidence in the record will not be reversed on appeal") (citations omitted). Here, appellant was only entitled to receive an interest in Spiegel & McDiarmid pursuant to the terms of the partnership agreement; the agreement provided that appellant could not recoup the value, if any, of Spiegel & McDiarmid's goodwill.[1] Thus, given the express terms of the partnership agreement making goodwill nonsalable, and the absence of any other factors that may make the goodwill valuable, we conclude that appellee failed to sustain her burden to justify valuation. Accordingly, the trial judge erred by valuing the goodwill of appellant's partnership interest in the law practice in the amount of $63,824, when the appellant had no way of ever realizing the value of that goodwill himself in the event he either terminated his employment with Spiegel & McDiarmid or sold his interest in the partnership. In this regard, we concur with the observation of the Court of Appeals of Wisconsin that:

> There is a disturbing inequity in compelling a professional practitioner to pay a spouse a share of intangible assets at a judicially determined value that could not be realized by a sale or another method of liquidating value.

*Holbrook, supra,* 309 N.W.2d at 355 (footnote

---

1. The terms of buy-sell and partnership agreements have been used to determine whether and how much goodwill exists in a professional partnership or corporation. In *Hertz v. Hertz,* 99 N.M. 320, 657 P.2d 1169 (1983), the law firm's stock restriction agreement, to which the husband was a party, provided that the value of the goodwill and other intangible assets of the firm would be $1.00. The Supreme Court of New Mexico held that "a non-shareholder spouse is bound to the same terms of a shareholder valuation agreement which affects the shareholder spouse. This insures that the nonshareholder spouse does not receive a *greater* value than that of the shareholder." *Id.* 657 P.2d at 1174 (emphasis in original). Provided these agreements were not entered into to defraud the nonprofessional spouse or their terms disregarded by parties to them, they have been held to control the distribution of marital property in some jurisdictions. *See also Mocnik v. Mocnik,* 838 P.2d 500 (Okla.1992) (goodwill of medical practice not includable as divisible marital property where under express language of stockholder's agreement, husband could not recoup goodwill value); *McCabe v. McCabe,* 525 Pa. 25, 575 A.2d 87 (1990) (husband's partnership interest in his law partnership was to be valued pursuant to the partnership agreement).

omitted).[2] Under the facts of this case, appellant's interest in his law firm's goodwill should have been given no value. Consequently, we reverse the trial court's finding and remand this issue for a revaluation of appellant's financial interest in the partnership of Spiegel & McDiarmid consistent with our holding herein.

### IV.

The third major issue on appeal is whether the trial court erred in finding that the "retained earnings" of McDiarmid Associates were marital property subject to distribution upon divorce. McDiarmid Associates is a real estate holding company, controlled and managed by appellant's father, that trades and rents real property in Northern Virginia. Both parties agree that appellant's interest in McDiarmid Associates was a gift to him from his parents. The trial court's findings of fact clearly stated that the husband's partnership interest in McDiarmid Associates was his separate property, that neither the husband nor the wife contributed to the increase in the value of the partnership, that the increase in value was due to the work of appellant's father in managing real estate investments and marketable securities, and that the husband did not withdraw income from McDiarmid Associates except for the purpose of paying tax on his share of the partnership income. Nonetheless, the trial court awarded the wife a share of the "retained earnings" of her husband's partnership interest because while appellant "conserved" the income on his separate assets, appellee "used over $50,000 in capital and income from her separate assets to establish and maintain the standard of living both parties enjoyed."

■ Whether income from separate property acquired during marriage constitutes marital property is also an issue of first impression in this jurisdiction. Many state courts have held that income generated by separate property may be "transmuted" to marital property.[3] We need not decide that issue here, however, because we concur with the observation of the Supreme Court of Wisconsin in *Wierman v. Wierman,* 130 Wis.2d 425, 387 N.W.2d 744, 749 (1986) that:

> [o]rdinarily sales or exchanges may change the identity or form of the property but do not necessarily change the character of the property from separate to marital property.

■ Here, as in *Wierman,* the originally gifted property of an interest in McDiarmid Associates did not generate income separate and distinct from itself. The Northern Virginia real estate held by McDiarmid Associates was sold, and the proceeds, representing a return of capital and profits, were retained in the partnership, thus increasing the value of McDiarmid Associates. The partnership, over which appellant's father maintained primary managerial control, retained all proceeds from the sales of real estate except distributions made for payment of taxes and management fees to appellant's father.

Because neither spouse contributed to the increase in the value of McDiarmid Associates or income generated by it, we conclude that appellant's interest in McDiarmid Associates retained its character as separate gifted property, and not marital property subject to equitable distribution. Accordingly, we hold that under the circumstances of this case, the income derived from separate property does not constitute marital property.[4] *But cf. Speer v. Speer,* 18 Ark.App. 186, 712

---

**2.** In citing *Holbrook,* we do not hold that goodwill only exists and is subject to distribution when its value can be realized by a sale. The aforementioned quotation is offered for the following proposition: when presented with an agreement to which the professional spouse is bound, it is inequitable to disregard the terms of that agreement and award the nonprofessional spouse an interest in the law firm beyond that enjoyed by the professional spouse.

**3.** *See Merriken v. Merriken,* 87 Md.App. 522, 590 A.2d 566 (1991) (income from separate property

owned by one spouse may be transmuted to marital property if income is generated in part through the efforts of the nonowning spouse); *Brodak v. Brodak,* 294 Md. 10, 447 A.2d 847 (1982) (same).

**4.** Our holding today is specific to the record and arguments made on this appeal. We are not deciding, as a matter of law, whether income from separate property is necessarily marital property under all circumstances.

S.W.2d 659 (1986) (accumulation of rental income during the marriage from husband's separate property constitutes marital property); *MacDonald v. MacDonald*, 532 A.2d 1046 (Me.1987) (holding that income acquired during marriage constitutes marital property); *In re Marriage of Reed*, 100 Ill.App.3d 873, 56 Ill.Dec. 202, 427 N.E.2d 282 (1981) (although property acquired before marriage is non-marital and its increase in value is likewise non-marital, any income derived from such property during marriage is deemed marital).[5]

Thus, we reject the trial court's classification of $71,180 of retained earnings in McDiarmid Associates as marital property and direct that upon remand of this case, this property interest be awarded to appellant as his sole and separate property in accordance with D.C.Code § 16–910(a) (1989).

## V.

■ Appellant also contends that the trial court erred in awarding alimony in the amount of $1,000 per month to appellee. It is well established in this jurisdiction that "we may reverse an award of alimony only where the finding is plainly wrong or without substantial evidence to support it." *McEachnie v. McEachnie*, 216 A.2d 169, 171 (D.C. 1966) (footnote omitted). The decision to award alimony falls within the sound discretion of the trial court which should consider the following factors in determining whether to grant alimony and in what amount:

> the duration of the marriage, the ages and health of the parties, their respective financial positions, both past and prospective, the wife's contribution to the family support and property ownership, the needs of the wife and the husband's ability to contribute thereto, and the interest of soci-

ety generally in preventing her from becoming a public charge.

*Id.* at 170 (footnote omitted).

The trial court's findings of fact clearly demonstrate that all of these factors were considered in awarding alimony to appellee. Because the award is supported by the evidence and provides reasonable and necessary support to appellee, we do not disturb the trial court's determination on alimony. However, the trial court is free on remand to adjust the amount, upward or downward, depending on its resolution of marital property.

## VI.

Appellant's final contention is that the trial court erred in awarding attorney fees to appellee in the amount of $65,318 pursuant to D.C.Code § 16–911(a) (1989). In reviewing an award of attorney fees in a divorce action,

> our scope of review is a limited one because disposition of such motions is firmly committed to the informed discretion of the trial court. Consequently, fee awards will not be set aside unless appellant makes a very strong showing of abuse of discretion.

*King v. King*, 579 A.2d 659, 663 (D.C.1990) (citations and internal quotation marks omitted).

In awarding attorney fees to appellee, the trial court considered whether the litigation had been oppressive or burdensome to appellee, "the quality of the services rendered, counsel's skills, the result of the litigation, the difficulty of the case, [the paying party's] ability to pay, and the earning capacity of both parties." *Sanders v. Sanders*, 602 A.2d 663, 669 (D.C.1992). The trial court determined that appellee's modest income was insufficient to pay for the substantial services she needed and received, but found that ap-

---

**5.** Those jurisdictions holding that income from separate property constitutes marital property rely on the Comments to, and have based their local statutes on, the 1970 version of § 307 of the Uniform Marriage and Divorce Act (UMDA) found in the *Handbook of the National Conference of Commissioners on Uniform State Laws*, § 307, at 204 (1970) on which their local statutes are based. There is no indication in the legislative history of the District of Columbia Marriage and Divorce Act that the District of Columbia has adopted or incorporated any of the comments contained in the UMDA. *But cf.* Bernard Gordon and Mark London, *The Marital/Separate Property Distinction in the District of Columbia*, 29 Cath.U.L.Rev. 939, 951 (1980) (urging District of Columbia courts to look to other state statutes based on the UMDA in distinguishing between marital and separate property).

pellant had substantial assets and earning capacity which enabled him to pay appellee's attorney fees. Moreover, the trial court concluded that appellee had received a "very high quality of legal services" and that the "exceptional level of skills" of appellee's attorney was reflected in the successful results achieved at the original trial.

We have no quarrel with the trial court's assessment of the calibre of the lawyering in this case. However, since one of the significant factors relied upon by the trial court—the results achieved—has been altered substantially by our disposition of this appeal, we remand to the trial court for further consideration the issue of whether an award of attorney fees should be made in this case.

### VII.

In conclusion, we affirm the trial court's ruling that goodwill of a law firm partnership interest is an asset subject to distribution upon dissolution of marriage. Under the unique circumstances of this case, however, we reverse the trial court's valuation and award of goodwill. We also reverse the trial court's valuation and distribution of marital assets and the court's award to appellee, as marital property, of the retained earnings of McDiarmid Associates. Though we do not reverse the trial court's determination on alimony, we hold that the trial court is free on remand to adjust the amount of alimony, depending upon its resolution of marital property. Finally, we also reverse the trial court's award of attorney fees to appellee. We remand this case to the trial court for further consideration consistent with this opinion.

*Affirmed in part, reversed in part and remanded.*