Joseph LEWIS, Appellant,

v.

Glenda LEWIS, Appellee.

No. 94–FM–990.

District of Columbia Court of Appeals.

Argued March 18, 1997.
Decided Feb. 27, 1998.

A. Palmer Ifill, Washington, DC, for appellant.

Shraga Kawior, Silver Spring, MD, for appellee.

Before WAGNER, Chief Judge, and SCHWELB and RUIZ, Associate Judges.

WAGNER, Chief Judge:

This appeal arises out of a divorce proceeding. Appellant, Joseph Lewis, challenges on appeal the trial court's findings on the distribution of the parties' property and the determination of child support. Specifically, he contends that the trial court erred in concluding as a matter of law that the settlement proceeds from a wrongful death and survival action brought by appellee, Glenda Lewis, arising out of the death of her daughter by a prior union, was her sole and separate property. Mr. Lewis also contends that the trial court erred in awarding the marital home to Mrs. Lewis, in calculating the amount of child support, and in awarding child support retroactively. We find no error in the trial court's ruling that the settlement proceeds are the sole and separate, nonmarital property of Mrs. Lewis. Mrs. Lewis concedes that the trial court erred in failing to take into account her income in setting the amount of child support. The trial court also failed to consider the value of the marital home and the complete assets of Mrs. Lewis in determining how it should be distributed. Therefore, we remand the case for further proceedings consistent with this opinion.

## I. *Factual Background*

Mr. and Mrs. Lewis were married on May 25, 1983. Three children were born to the parties: Don Lewis, deceased; Duane Lewis, born on July 24, 1978; and Dionne Lewis, born on May 17, 1986. In 1984, the couple purchased a home in Washington, D.C. to which Mrs. Lewis contributed two-thirds of the settlement costs, and Mr. Lewis contributed one-third. Each of them agreed to pay one-half of the mortgage payments; however, Mrs. Lewis became seriously ill for six months following Dionne's birth in 1986, and as a result, she was unable to make her share of the payments. She suggested that Mr. Lewis pay the mortgage payments in full, and she would pay the other bills. Mr. Lewis ceased making any contributions to the mortgage in January 1987. Mrs. Lewis paid the mortgage and the costs for repairs and improvements to the home thereafter. She also paid for utilities, food and clothing for the children, who were in her care. Except for a few gifts, Mr. Lewis made no financial contributions to the children's support.

After continuous abuse, Mrs. Lewis filed for a Civil Protection Order against Mr. Lewis, which the court granted on September 21, 1988. Thereafter, the parties lived separate and apart from each other. Mrs. Lewis sued Mr. Lewis for absolute divorce based on separation of one year in April of 1993. Mr. Lewis counterclaimed, seeking alimony and a declaration that the settlement proceeds Mrs. Lewis received from a wrongful death and survival action were marital property, and subject to division, along with the marital abode. Mrs. Lewis filed a motion for summary judgment, claiming that the settlement proceeds constituted her sole and separate property, which the trial court granted.

Following a trial on the remaining issues, the trial court entered Findings of Fact, Conclusions of Law and Judgment of Absolute Divorce. In addition to granting the divorce, the trial court determined that: (1) Mr. Lewis was gainfully employed and earning at that time $41,000 per year, and therefore, he should pay child support in the amount of $1,100.16 per month according to the Child Support Guidelines; (2) Mr. Lewis should pay child support (totalling $24,108) retroactive to the date of the filing of the complaint; (3) Mr. Lewis did not establish a factual basis or sufficient need for alimony; (4) The marital home was purchased for $82,000 and the parties' mortgage loan was in the amount of $82,820 at an interest rate of 13.5%; and (5) the parties contributed equally to mortgage payments made on the home for a two-year period. Since January 1987 until the time of trial, Mrs. Lewis had made all contributions to the mortgage, utilities and other expenses for the home. The court made no specific finding as to the fair market value of the property; however, it awarded Mrs. Lewis the entire interest in the real property.

## II. *The Wrongful Death and Survival Proceeds*

Mr. Lewis argues that the trial court erred in ruling on summary judgment that the settlement proceeds from the wrongful death and survival action received by Mrs. Lewis during the marriage are not marital property subject to distribution between the parties on divorce. He contends that settlement proceeds are not property acquired by "bequest, devise, or descent" within the meaning of D.C.Code § 16–910(a) (1997), which may be assigned under the statute to each party as his or her sole and separate property.

The facts underlying this issue are not in dispute. Kathryna Gordon was born to Mrs. Lewis in 1974, and she died on December 20, 1985 at Howard University Hospital. Mr. Lewis concedes that he is not Kathryna's biological father. Mrs. Lewis was appointed personal representative of Kathryna's estate on July 11, 1986 by the Superior Court. She filed a wrongful death and survival action in her individual capacity and as personal representative of her daughter's estate. The case was settled and dismissed with prejudice following Mrs. Lewis' execution of a confidential settlement agreement and general release. The settlement agreement did not allocate the settlement proceeds to any particular claim. The net proceeds of settlement were distributed in accordance with the laws of intestate succession of the District of Columbia. *See* D.C.Code § 19–308 (1997).

Mr. Lewis argues that neither § 12–101 (Survival Act) nor § 16–2701 (Wrongful Death Act) of the D.C.Code are statutes of descent and inheritance. He contends that the rights of action under these statutes are not property interests in the decedent which are subject to inheritance. Therefore, he contends, the proceeds of settlement received by Mrs. Lewis constitute property acquired by her during the marriage which is subject to distribution under D.C.Code § 16–910(b).

The distribution of property in a divorce action brought in the District of Columbia is governed by D.C.Code § 16–910. Absent a valid ante-nuptial or post-nuptial agreement or a decree of legal separation disposing of property, the court must "assign to each party his or her sole and separate property

acquired during the marriage by gift, bequest, devise, or descent,...." D.C.Code § 16–910(a). Thus, the statute expressly exempts from distribution between the parties property that is acquired during the marriage by gift, bequest, devise, or descent. *Hemily v. Hemily*, 403 A.2d 1139, 1142 (D.C. 1979). We have stated that

> [t]he logic of exempting these categories of property from a trial judge's broad authority to apportion is that when property is acquired by one spouse in one of these ways, there normally would be little basis for an objectively reasonable expectation of an interest in that property on the part of the other spouse.

*Id.* at 1142–43 (footnote omitted). The term "descent" is not defined in the statute governing distribution of property on dissolution of a marriage. Therefore, we examine the statutes governing survival and wrongful death actions as they pertain to this case to determine how the proceeds of judgment or settlement are treated for purposes of descent and distribution.

In the District of Columbia, where negligent conduct results in death, there are rights of action under both the Wrongful Death Act and under the Survival Act. *Semler v. Psychiatric Inst. of Washington, D.C., Inc.*, 188 U.S.App.D.C. 41, 43, 575 F.2d 922, 925 (1978). "The Wrongful Death Act is said to create an entirely *new right of action* in favor of designated beneficiaries." *Id.*, at 43, 575 F.2d at 924 (emphasis in original). Its purpose is to provide for close relatives benefits which they might reasonably be expected to have received from the decedent had he or she lived. *Id.*, at 43–44, 575 F.2d at 924–25. Damages recovered under the Wrongful Death Act "inure to the benefit of his or her family and shall be distributed to the spouse and next of kin according to the allocation made by the verdict or judgment, or in the absence of allocation, according to the provisions of the statute of distribution in force in the District." D.C.Code § 16–2703. Recovery under the Wrongful Death Act "is based on the pecuniary benefits that the *statutory* beneficiaries might reasonably be expected to have derived from the deceased had he

lived." *Semler,* 188 U.S.App.D.C. at 44, 575 F.2d at 925 (emphasis added).

 The Survival Act preserves for the benefit of the decedent's estate a right of action the decedent had before death. *Semler, supra,* 188 U.S.App.D.C. at 44, 575 F.2d at 925. Its purpose is to place the decedent's estate in the same position it would have occupied if the decedent's life had not been terminated prematurely. *Id.* Such an action must be brought by the legal representative of the decedent's estate, and all proceeds recovered by the representative pass to the decedent's estate. *Id.* As assets of the estate, the proceeds of the survival action recovery would be subject to distribution in accordance with the decedent's will or the laws of intestacy. *See* D.C.Code § 20–701(a) (1997) and § 19–301 *et seq.* In light of their intended beneficiaries and manner of distribution, the proceeds of both survival and wrongful death actions have characteristics similar, if not identical, to the "sole and separate property acquired during the marriage by gift, bequest, devise or descent" that is exempted from distribution as martial property under D.C.Code § 16–910(a). Like other property subject to be assigned solely to one spouse under D.C.Code § 16–910(a), "there normally would be little basis for an objectively reasonable expectation of an interest in that property on the part of the other spouse." *See Hemily, supra,* 403 A.2d at 1142–43; *Semler,* 188 U.S.App.D.C. at 44, 575 F.2d at 925.

 In this case, the settlement proceeds were not expressly allocated between the survival and wrongful death claims, and no allocation was made to Mrs. Lewis as a result of the settlement of the wrongful death action. Absent allocation, the entire proceeds inure to the estate and are to be distributed in accordance with the statutes governing the distribution of intestate estates. D.C.Code § 16–2703. Therefore, all of the proceeds were treated as subject to the jurisdiction of the probate court, and the required notices under D.C.Code § 20–731 (1981) were filed.[1] The settlement proceeds were distributed according to the laws of intestate succession to the father and mother of the deceased minor. *See* D.C.Code § 19–308. Mr. Lewis is not within the class of people intended to benefit from either the wrongful death or the survival action for he was not a beneficiary of Kathryna Gordon's estate nor her next of kin under the laws of intestacy.[2] *See* D.C.Code §§ 16–2703; 19–301, –321; *see also* D.C.Code §§ 18–301, –308 (1997).[3] Given the pertinent statutory schemes and the facts of this case, we find no error in the trial court's determination that the proceeds of the settlement of the actions arising out of the death of Mrs. Lewis' child by a prior union are her sole and separate property and not subject to equitable distribution between these parties upon divorce. The court properly ruled, therefore, that Mrs. Lewis was entitled to summary judgment on this issue as a matter of law. *See Young v. Sherwin–Williams Co.,* 569 A.2d 1173, 1175 (1990) (citing Super.Ct.Civ.R. 56(c)).

### III. *Child Support Issues*

Mr. Lewis argues that the trial court erred in determining the amount of child support.

---

1. This provision of the probate law then in effect required the filing of a Notice to Interested Persons of Filing and Account and a Waiver of Filing Inventories and Accounts.

2. Under the common law, "next of kin" meant "those individuals who were a testator's closest blood relatives." *O'Connell v. Riggs Nat'l Bank,* 475 A.2d 405, 410 (D.C.1984). The District's statute governing intestate distribution includes only blood relatives and a surviving spouse, *see* D.C.Code §§ 19–301, –321, with no distinction between relatives of "whole- and half-blood," D.C.Code § 19–315. Although not pertinent here, by statute, there are mutual rights of inheritance between an adoptor and adoptee. D.C.Code § 16–312.

3. D.C.Code § 16–2703 provides in pertinent part as follows:

> The damages recovered in a[] [wrongful death] action pursuant to this chapter, except the amount specified by the verdict or judgment ... inure to the benefit of [decedent's] family and shall be distributed to the spouse and next of kin according to the allocation made by the verdict or judgment, or in the absence of an allocation, according to the provisions of the statute of distribution in force in the District.

The statutory provisions for descent and distribution in the District appear in D.C.Code §§ 19–101, –701. *See also* D.C.Code §§ 18–301, –308 (1997) (devises by will).

Specifically, he .contends that the trial court failed to take into account an off-set allowed to the non-custodial parent by the Child Support Guideline (Guideline). *See* D.C.Code § 16–916.1. Our review of the record indicates, and Mrs. Lewis concedes, that the trial court erred in this regard. The trial court found that Mr. Lewis earned $41,000 per year, while Mrs. Lewis earned $40,000 per year. There appears to be no dispute that the amount of $1,107.17 per month awarded was determined without applying the off-set. Under § 16–916.1(j), the non-custodial parent is entitled to a reduction by a percentage that corresponds to the custodial parent's share of total parental gross income. The reduction shall be determined according to the following formula:

(1) Gross income of the custodial parent minus the appropriate threshold amount provided for in paragraph 2 of this subsection and day-care cost divided by gross income of the noncustodial parent plus the custodial parent's gross income minus appropriate threshold amount. . . .

(2) The threshold amount to be used to apply the offset, . . . shall be $16,500 gross income if there is 1 child. For each additional child, the threshold amount to be used to apply the offset shall increase by $2,000.

D.C.Code § 16–916.1(j)(1) and (2). The result here is as follows: [4]

$40,000 − $18,500/$41,000 + $40,000 − $18,500 = .344.

34% of non-custodial obligation—$13,202 (total of child support) = $4,488.68.

$13,202 − $4,488.68 or $8,713.32 per annum or $726.11 per month.

If the off-set had been applied, as Mr. Lewis points out, his child support obligation would have been approximately $726.11 per month.

Mr. Lewis also argues that the court abused its discretion in awarding child support in this case because the children are self-supporting due to the distributions of the settlement proceeds to the children, particularly since the income yielded $1,400 per month. Mrs. Lewis contends that the income payments from the trust are no longer available to the children because they have been placed in trust for their future education. This factor cannot be used to relieve a parent of the duty to support a minor child. However, D.C.Code § 16–916.1(m) provides for an adjustment to the support amount by plus or minus 3% for each level if the factfinder finds the child has "regular and substantial income that can be used for child support without impairment of the child's current or future education." In recalculating child support upon remand, the trial court may consider the propriety of an adjustment for this factor under the Guideline.

Mr. Lewis also contends that the trial court erred in awarding child support retroactive to the date of the filing of the complaint for custody and support. In any event, he contends that the amount assessed, $24,108, was incorrect because his income was different at the commencement of the lawsuit than it was at the time of trial.

The issuance of child support is governed by D.C.Code § 16–916, which provides that "[w]hen a father or mother fails to maintain his or her minor child, the Court may decree that the father or mother pay reasonable sums periodically for the support and maintenance of the child,. . . ." By statute, the parents of children owe a duty to support their minor children. D.C.Code § 16–916(a) and (c); *see also Cyrus v. Mondesir*, 515 A.2d 736, 738 (D.C.1986). Before the enactment of the Guideline, the trial court had broad discretion to determine the amount of child support, and to make any support order retroactive. *J.A.W. v. D.M.E.*, 591 A.2d 844, 848 (D.C.1991); *Trezevant v. Trezevant*, 403 A.2d 1134, 1137 (D.C.1979). Under the Guideline, child support may be increased retroactively. *J.A.W.*, 591 A.2d at 848–49.

■ In the present case, it was determined that Mr. Lewis had made no contributions to support his children, except for a few gifts, and that Mrs. Lewis had supported the children. It was within the trial court's discretion to order Mr. Lewis to pay child support retroactive to the date of the filing of

---

4. $40,000 (gross income of custodial parent) − $18,500/$41,000 (gross income of non-custodial parent) + $40,000 (gross income of custodial parent) − $18,500 (threshold amount) = .344.

the complaint. However, the basis for the amount set is not clear from the findings. Therefore, on remand, the trial court should make additional findings in support of the amount of the award or recalculate the amount on the basis of the evidence pertinent to the issue.

### IV. *Distribution of Marital Home*

■ Mr. Lewis argues that the trial court erred in distributing the parties' marital property. The court's determination of how marital property is distributed in a divorce proceeding will not be disturbed absent an abuse of discretion. *See Leftwich v. Leftwich,* 442 A.2d 139, 142 (D.C.1982). Mr. Lewis contends that a stricter standard of review applies here because the trial court adopted essentially verbatim Mrs. Lewis' proposed findings. *See id.; Sullivan v. Malarkey,* 392 A.2d 1057, 1061 (D.C.1978). Our review of the record indicates that while some of the findings are similar to those proposed by Mrs. Lewis, the trial court did not adopt them verbatim. We are satisfied that the trial court's "findings of fact and conclusions of law represent the trial judge's own determinations rather than the advocacy of the prevailing party." *Leftwich,* 442 A.2d at 142. Thus, we adhere to the abuse of discretion standard.

■ The distribution of marital property in a divorce proceeding is governed by D.C.Code § 16–910, which provides that all property acquired during the marriage that does not qualify as sole and separate property of the parties must be distributed

> in a manner that is equitable, just and reasonable, after considering all relevant factors....

D.C.Code § 16–910(b). The trial court has broad discretion in distributing marital property. *Dews v. Dews,* 632 A.2d 1160, 1164 (D.C.1993). The trial court's findings will not be disturbed if it considers all relevant factors listed in § 16–910. *Id.* (citations omitted). The factors will vary from case to case, therefore, this court will need only to determine whether the trial court abused its discretion in assessing the " 'totality of circumstances' and its resultant order." *Id.* (citations omitted). "If the trial court's find-

ings of fact, conclusions of law and judgment, taken together ... present an integrated, internally consistent and readily understood whole[,]" its decision will not be disturbed on appeal. *Bowser v. Bowser,* 515 A.2d 1128, 1130 (D.C.1986).

■ Mr. Lewis contends that the trial court failed to consider, in assigning the marital home solely to Mrs. Lewis, the full extent of her assets, including the settlement proceeds, the value of the property and their full equity in it, or his full contribution to it, including the use of his veteran's benefits to purchase it. Each of the parties testified that the property was valued at a minimum of $150,000. The trial court did not use this figure to determine the parties' equity in the home, but rather the much lower purchase price. The parties' equity in the home is an important factor for consideration in determining distribution of the marital abode. The trial court restricted the cross-examination of Mrs. Lewis with respect to her assets, specifically the settlement proceeds. It took the view that having already ruled that the settlement proceeds of the wrongful death and survival action are non-marital property, it was inappropriate to inquire about it because it was irrelevant in determining the distribution of the other marital property. However, D.C.Code § 16–910(b) requires the court to consider, in making an equitable distribution of marital assets, all relevant factors, including the assets of each party, without regard to their source. The failure to take into account these two major factors, *i.e.,* the parties' equity in the home and a major asset of one spouse, results in an abuse of discretion. Therefore, this aspect of the decree must be remanded for further consideration.

### V. *Conclusion*

For the foregoing reasons, the order of the trial court granting summary judgment on the issue of the exclusion of the proceeds of settlement of the wrongful death and survival action is affirmed. The case is remanded to the trial court for further proceedings on the issue of child support, retroactive and pro-

spective, and distribution of the marital home, consistent with this opinion.

*So ordered.*