**Willie MURPHY, Appellant,**

v.

**Veta MURPHY, Appellee.**

**No. 09–FM–568.**

District of Columbia Court of Appeals.

Submitted June 29, 2011.

Decided June 28, 2012.

---

45. *Id.* at 734.

Hughie D. Hunt, filed a brief for appellant.

Appellee did not file a brief.

Before THOMPSON, Associate Judge, RUIZ, Associate Judge, Retired,* and KING, Senior Judge.

RUIZ, Associate Judge, Retired:

Appellant, Willie Murphy, filed a complaint in Superior Court for absolute divorce from appellee, Veta Murphy. After the trial court granted the divorce and distributed the marital property, appellant filed a motion for new trial or to amend the court's judgment for a reevaluation of the parties' main marital asset, their jointly-owned home. The court denied the motion. On appeal, appellant argues that (1) a steep decline in value of the marital property before the court's order of disposition prevented the distribution from being "equitable, just, and reasonable" as required by statute, (2) the trial court erred in making its property distribution by failing to credit appellant for his mortgage payments, and (3) the court erred in failing to address appellant's request for attorney's fees. On this record, we cannot ascertain whether the trial court's valua-

---

* Judge Ruiz was an Associate Judge of the court at the time of submission. Her status changed to Associate Judge, Retired, on September 1, 2011.

tion of the marital property appropriately considered evidence of current valuation, which would be required for a distribution that is "equitable, just, and reasonable." We further conclude that the trial court erred in failing to address appellant's request for attorney's fees. Accordingly, we reverse and remand for further proceedings.

## I.

Willie and Veta Murphy were married on February 1, 1994. In 1999, the couple applied for and obtained a house, the "S Street property," through the District of Columbia Housing Lottery. They purchased the property and obtained a $180,000 renovation loan, secured by the house. Appellant has made all mortgage payments on the property except for one made by appellee. Following their marriage, the parties lived together in a rented apartment until June 2004, when appellant moved into the S Street property.

On January 31, 2006, appellant filed a complaint for absolute divorce. At trial, held in May 2008, appellant introduced into evidence the Office of Tax and Revenue value assessment of the S Street property for the 2008 tax year ($959,940). He testified that due to deteriorating market conditions and further repair work needed on the property, however, he believed the then-current value of the property was $800,000 or less. Appellee, who was represented by counsel, did not present any

evidence contradicting appellant's testimony on the property valuation. In January 2009, the trial court granted the divorce and ordered the distribution of the S Street property, the parties' only substantial asset, at the $959,000 tax assessment value.[1] Contending that the property had suffered a further significant decline in value during the period since the trial, appellant filed an unopposed motion for new trial and/or to alter or amend judgment pursuant to Superior Court Civil Rule 59(e), which the court denied. This timely appeal followed.

## II.

Appellant argues that the trial court erred in denying his motion for new trial or to alter or amend judgment, contending that the continuing decline in the value of the S Street property during the seven months from trial to disposition prevented the distribution of marital assets from being "equitable, just, and reasonable," as required by D.C.Code § 16–910(b) (2011 Supp.).

### A.

■ In distributing marital property, "[t]he trial court has broad discretion and its decision is to be based upon an assessment of the totality of the circumstances." *Pimble v. Pimble,* 521 A.2d 1173, 1174 (D.C.1987). That discretion must be exercised consistent with the obligation to distribute marital property "in a manner that

---

1. The court ordered that $65,000 and $55,000 be deducted from the parties' equity in the property ($804,000): the former to compensate appellant for his efforts to increase the value of the property and the latter to account for appellee's "callous act" of cutting off her husband's access to health insurance when he was undergoing major bilateral hip replacement surgery. The trial court, "balancing the legal facts," awarded 65% and 35% of the remaining $684,000 to appellant and appellee, respectively. The court ordered appellant to either pay appellee her respective share ($240,000) or to sell the property and apportion the profits accordingly. Appellant filed a motion to stay, which was denied by this court on June 14, 2010. According to the Superior Court docket, while this appeal was pending, appellee requested a court order to sell the property to a third party in order to avoid foreclosure. The property was sold for $705,000, and proceeds from the sale have been held in escrow until this court's disposition of the appeal. A total of $80,000 has been distributed in equal parts to appellant and appellee.

is equitable, just, and reasonable, after considering all relevant factors, including, but not limited to" those enumerated in the statute. D.C.Code § 16–910(b) (identifying, *inter alia*, the contributions, needs, income, debt, skills and prospects of each party). Distribution of marital property necessarily requires a valuation of those assets. *Id.* (providing that "the court shall ... value and distribute" marital property and debt). As we have noted, for any distribution to be considered "just"—as required by the statute—the court must consider current asset values. *McDiarmid v. McDiarmid,* 649 A.2d 810, 813 (D.C.1994). Although it is within the trial court's discretion to " 'adopt a date for valuation which best works economic justice between the parties,' " *id.* (quoting *McNaughton v. McNaughton,* 412 Pa.Super. 409, 603 A.2d 646, 649 (1992)), "there are circumstances in which the distribution of assets based on stale valuations violates the provisions of D.C.Code § 16–910, requiring that the distribution be equitable, just and reasonable." *Id.* In such circumstances, the trial court must take relevant evidence of current valuation into account.

■ We held in *McDiarmid* that "where more than an insubstantial period of time has elapsed between a trial and the entry of a court order valuing and distributing marital property," the trial court may not refuse to revalue marital assets "after an uncontroverted proffer was made to the trial judge that the marital assets had materially changed in value since the trial." *Id.* (noting that a court order ignoring the "current values of the marital property" renders the court's distribution scheme irresponsive "to the parties' then current needs and circumstances"). We conclude that this is a similar case, and that the trial court erred in dismissing, without considering evidence affecting the valuation of the property proffered both at trial and after the judge's ruling, appellant's motion arguing that the use of a

stale valuation of the marital property prevented the distribution from being "equitable, just and reasonable." *Id.*

In *McDiarmid,* we reversed the trial court's distribution of marital property, citing a failure to revalue certain marital assets—in particular, the marital home— "when a specific proffer was made ... that the substantial passage of time after trial, and before decision ... resulted in substantial fluctuations in the values of those assets." *Id.* at 812. Though the parties in *McDiarmid* had stipulated to the value of the relevant marital assets at trial, the husband later obtained an updated appraisal of the house and submitted it to the court with a motion to reconsider and amend the court's preliminary findings due to "substantial changes in the circumstances relating to marital property" during the eighteen months between trial and the court's decision. *Id.* The wife did not controvert the reappraised value. *Id.* at 813. In reversing the court's denial of the husband's motion, we noted the persuasive rationale of the Supreme Court of Pennsylvania in *Sutliff v. Sutliff,* 518 Pa. 378, 543 A.2d 534, 537 (1988), and recognized that the use of a stale valuation precluded the distribution from being "equitable, just, and reasonable" as required by statute. *See McDiarmid,* 649 A.2d at 813 ("Ignoring the most current value of the marital home, *inter alia,* which arguably had increased dramatically ... and distributing that property according to a stale valuation, rendered the court's distribution scheme irresponsive to the *then* current needs and financial circumstances of the parties.").

■ Here, the trial court denied appellant's motion, finding *McDiarmid* inapplicable because (1) it concerned a delay between the time of trial and the court's final order where McDiarmid's proffer for re-evaluation was made prior to, not (as here) following, judgment; and (2) McDiarmid

had presented the affidavit of an expert appraiser whereas, here, appellant testified and presented an affidavit with his own valuations of the property.

 Notwithstanding these factual differences, *McDiarmid's* rationale is applicable to this case. *McDiarmid* establishes that to be "equitable, just and reasonable," the trial court must ensure a proper valuation of marital property responsive to the parties' *current* needs and financial circumstances. *See id.* ("An equitable distribution *requires the court* to consider the current values of the marital property, such that upon distribution, each party's needs are adequately addressed." (emphasis added)). This requires proper valuation of the marital assets as close to distribution as possible so as to account for any market fluctuations that might have occurred in the interim. *See McNaughton*, 603 A.2d at 649 (noting that "where a long period of time has passed between the separation and distribution, the court should set values as close to distribution as possible"). What constitutes a substantial passage of time sufficient to trigger an updated valuation depends on the type of property and economic conditions affecting that property, as well as the significance of the property in the overall mix of assets and liabilities. Moreover, valuation as of the precise time of distribution is unlikely to be possible in the context of litigation, and some delay between the valuation and order of distribution is to be expected. What is to be avoided is a distribution based on a valuation of assets that no longer reflects the court's weighing of the relevant factors in making a final distribution.[2]

In this case, the trial court's distribution, ordered on January 16, 2009, relied on an April 22, 2008 tax assessment. Nearly nine months had elapsed between the tax valuation date relied upon by the court and the judgment. Appellant's testimony at trial had already alerted the judge, before the distribution order, that the 2008 tax appraisal might reflect an inflated valuation of the principal marital asset, and his subsequent affidavit after the order further confirmed the continuing slide in value. Both valuations were uncontroverted by the opposing party, as in *McDiarmid*. The passage of time, even if shorter than in *McDiarmid*, acquired particular significance when considered in the context of a well-known implosion of the housing market and financial upheaval in 2008. Thus, as in *McDiarmid*, the trial court had to assure it had a suitable valuation as close to the date of distribution as possible.[3] *Id.* As the court failed to con-

---

**2.** We recognize that in *McDiarmid* the court had ordered distribution of the marital home to the wife as part of a 50–50 distribution of all marital assets. A substantial increase in the value of that asset, therefore, would have in fact distributed a share to the wife in excess of 50%. In this case, on the other hand, the trial court made an unequal distribution—65% to the husband and 35% to the wife, see note 1, *supra*—and the house has been sold, so that distribution in accordance with the trial court's percentage allocations is possible. The question that remains, however, particularly in view of the court's assessment that appellant's needs entitled him to a higher percentage than appellee, is whether the court would have allocated an even higher percentage to him if the court had taken into

account the lower valuation of the parties' assets. Both parties were in their early 60s, but the court found their needs were unequal. Appellant had been a painter, but after his surgery, he was employed at Home Depot earning under $12 per hour (an annual gross of $25,000). The court found that he had "limited assets and work skills with no additional source of income." Appellee, on the other hand, had been employed at Holy Cross Hospital since 1998, "is healthy and capable of supporting herself."

**3.** *See also* Super. Ct. Dom. Rel. R. 52(c) (prescribing action to be taken by the court where a decision is not rendered within 60 days following the date on which a motion was

sider evidence of more current valuation of the primary marital asset at a time of acute market volatility, it could not properly exercise discretion in assessing the " 'totality of circumstances' " when it denied appellant's motion to alter or amend the distribution in light of current conditions. *See Lewis v. Lewis,* 708 A.2d 249, 254 (D.C.1998) (quoting *Dews v. Dews,* 632 A.2d 1160, 1164 (D.C.1993)).

### B.

■■■■ The trial court also did not provide adequate explanation, as required by Superior Court Domestic Relations Rule 52(a), for its chosen valuation of the marital property. *See Ealey v. Ealey,* 596 A.2d 43, 46 (D.C.1991) ("A trial judge must make findings of fact and conclusions of law with respect to every material issue that is raised; otherwise meaningful appellate review cannot occur and this court must remand the case or the record."); Super. Ct. Dom. Rel. R. 52(a). The grounds for a trial court's findings must be set out not only to support its decision, "but to prevent the relitigation of facts and issues in the future" (in the case of modifications of prior orders) and to ensure that issues "are resolved based upon the evidence, and not extralegal considerations." *Foster–Gross v. Puente,* 656 A.2d 733, 737 (D.C.1995) (internal quotation marks omitted). " 'Where the trial court provides only conclusory findings, unsupported by subsidiary findings or by an explication of the court's reasoning with respect to the relevant facts, a reviewing court simply is unable to determine whether or not those facts are clearly erroneous.' " *Williams v. Williams,* 554 A.2d 791, 793 (D.C.1989) (quoting *Pimble,* 521 A.2d at 1175).

As already discussed, appellant testified at trial that the rapidly deteriorating housing market likely reduced the value of the marital home from the tax-assessed value

of about $959,000 to about $800,000. Additionally, in an affidavit supporting his motion to amend judgment or for new trial, appellant stated that market conditions and needed repairs factored into his making a further downward adjustment, to $700,000. This represents a loss in value of almost 30%. Appellee did not present any evidence on property value during the trial, nor did she object to the motion for new trial or to amend the judgment. The Office of Tax and Revenue property assessment introduced by appellant at trial provided some evidence of an expected decline in the estimated market value of the S Street property. In addition to specifying the 2008 tax assessed value of the property ($959,940), the assessment listed a lower preliminary proposed value for the 2009 tax year ($956,740). Although this $3,000 decline is significantly less than that proffered by appellant, it nonetheless lent support to the downward trend highlighted in appellant's testimony and affidavit.

The trial court did not provide any reasoning for basing the distribution made in 2009 on $959,000, the 2008 tax valuation described in the court's order as the "current assessed value of the house." Without explanation as required by Rule 52(a), there is no evidence as to whether—and if so, how—the trial court considered and reconciled the other valuations that were presented. Thus, we cannot meaningfully review the court's decision to base distribution on a $959,000 valuation of the property. *See Williams,* 554 A.2d at 793.

■■■■ Specifically, the trial court did not address appellant's testimony and estimates of the property's value. An " 'owner of … land … is generally held to be qualified to express his opinion of its value merely by virtue of his ownership. He is

taken under advisement or a nonjury trial concluded).

deemed ... to have a reasonably good idea of what it is worth.' " *Lowrey v. Glassman,* 908 A.2d 30, 37 (D.C.2006) (quoting *District of Columbia Rede. v. Land Agency v. Thirteen Parcels of Land,* 534 F.2d 337, 339 n. 4 (1976)). For that reason, "an owner's estimate of her property's value, although she lacks expertise or hard evidence to support the estimate, is admissible as to value." *Maalouf v. Butt,* 817 A.2d 189, 191 (D.C.2003). An owner's lack of general knowledge of value goes only to the weight of the testimony, not its competency. *Id.* at 191–92. Here, although the trial court admitted appellant's testimony on the value of the property, we do not know whether the judge simply did not credit appellant's testimony or thought it was insufficient without independent corroboration. What we now know is that appellant's valuation of the property at $700,000 was spot-on with the price at which the property was sold to a third party. See note 1, *supra.* Because the 2008 tax valuation date of the property was not reasonably proximate to the distribution of the property in 2009, at a time of rapidly declining property values, and the trial court did not explain why it chose the 2008 tax valuation over appellant's uncontroverted lower valuations, we remand for the trial court's reconsideration of its order in light of the current valuation of the S Street property established by the price at which it was sold, so that it may distribute the property in an "equitable, just, and reasonable" manner. D.C.Code § 16–910(b); *see* Super. Ct. Dom. Rel. R. 59(a) ("A motion to alter or amend judgment or for new trial may be granted where the interests of justice require.").[4]

### III.

■■■■ Finally, appellant contends that the Superior Court erred in failing to address his request for attorney's fees.

■■■■ "When reviewing an award for attorney's fees in a divorce action, generally 'our scope of review is a limited one because disposition of such motions is firmly committed to the trial court.' " *Sudderth v. Sudderth,* 984 A.2d 1262, 1269 (D.C.2009) (quoting *Steadman v. Steadman,* 514 A.2d 1196, 1200 (D.C.1986)). "Therefore, it requires a very strong showing of abuse of discretion to set aside the decision of the trial court." *Steadman,* 514 A.2d at 1200. However, "[t]o assure proper review according to this standard, the rules of court require detailed, written findings of fact and separate conclusions of law upon all matters." *Moore v. Moore,* 391 A.2d 762, 770 (D.C.1978) (remanding for further findings and conclusions regarding an award of attorney's fees in child custody action). Specifically, Superior Court Domestic Relations Rule 54(d) prescribes that

---

4. We find no merit in appellant's claim that the trial court failed to credit appellant for his mortgage payments. While "[t]he parties' respective monetary contributions to the property are highly relevant in reaching an equitable distribution of the property," *Burwell v. Burwell,* 700 A.2d 219, 225 (D.C.1997), appellant's mortgage payments constituted one of many relevant factors comprehensively considered by the trial court in arriving at an equitable distribution. The court was cognizant that appellant "paid the mortgage over the course of the loan with the exception of one payment made by [appellee]," and also examined the age and health of the parties, their respective contributions to the marriage, and the circumstances of their divorce. As a result, we are confident that the court engaged in a " 'conscientious weighing of all relevant factors, statutory or otherwise, before reaching a conclusion about the proper distribution of the property.' " *Barnes v. Sherman,* 758 A.2d 936, 939 (D.C.2000) (quoting *Burwell v. Burwell,* 700 A.2d 219, 225 (D.C. 1997)). The trial court considered and balanced all relevant statutory factors, including appellant's mortgage payments, in distributing 65% of the value to appellant. See note 1, *supra.*

claims for costs and attorney's fees are "to be made in the complaint or answer and supported in detail in a motion." Super. Ct. Dom. Rel. R. 54(d)(1). The rule further provides that "[t]he Court shall find the facts and state its conclusions of law as provided in [Rule] 52(a), and a judgment shall be set forth as provided in [Rule] 58." Super. Ct. Dom. Rel. R. 54(d)(3). "If a trial court fails to document its findings and conclusions, we must remand for that purpose." *Moore*, 391 A.2d at 770.

 " 'In the absence of statutory or rule authority, attorney's fees generally are not allowed as an element of damages, costs, or otherwise.' " *Sudderth*, 984 A.2d at 1269 (quoting *Delacruz v. Harris*, 780 A.2d 262, 264 (D.C.2001)). However, this general presumption may be altered where, as in domestic cases, statutory authority expressly articulates otherwise. *Cf. id.* at 1269–70. Pursuant to D.C.Code § 16–911(a)(1) (2011 Supp.), " 'during the pendency of an action for divorce . . . the court may . . . require the spouse or domestic partner to pay suit money, including counsel fees, to enable such other spouse to conduct the case.' " *Id.* at 1270 (quoting *Tydings v. Tydings*, 567 A.2d 886, 890 (D.C.1989)); *see* D.C.Code § 16–911(a)(1) (2001). "This statutory grant of authority to the trial court 'is designed to ensure that a party in a divorce action not be hindered unfairly in maintaining the action by unequal burdens between the spouses.' " *Id.* (quoting *Tydings*, 567 A.2d at 890).

Pursuant to Rule 54, appellant pled in his complaint for the Superior Court to award "a reasonable sum as and for counsel fees." Appellant supported his request at trial by introducing several exhibits into evidence, including his attorney's fees, as well as uncontroverted testimony regarding his financial hardship and his period of unemployment. The trial court did not award any attorney's fees to appellant. The trial court might well have concluded, having considered both appellant's request for attorney's fees and his economic disadvantage relative to appellee, that the claim for attorney's fees nonetheless should be denied. But the court gave no explanation for denying appellant's request; indeed it made no explicit determination on the request for fees. Therefore, "given the sparsity of the findings [on this issue], we are at a loss as to what was actually considered." *Wood v. Wood*, 309 A.2d 103, 107 (D.C.1973). As the trial court made no findings on appellant's request for attorney's fees as required by Rule 54(d)(3), "[w]e therefore remand the case to the trial court for a more detailed statement of the reasons for the action taken." *Id.*

For the foregoing reasons, the judgment of the Superior Court of the District of Columbia is reversed and remanded for further proceedings in accordance with this opinion.

*So ordered.*