**Richmond**

JOHN A. RUSSELL

v.

HARRIET M. RUSSELL

No. 1292-88-2

Decided December 11, 1990

412

COUNSEL

James G. Smalley, for appellant.

Murray J. Janus (Ronald S. Evans; Bremner, Baber & Janus, on brief), for appellee.

OPINION

KEENAN, J.—John A. Russell (husband) appeals a decision in which the trial court granted Harriet M. Russell (wife) a monetary award in the amount of $25,000. In this appeal, the husband contends that in valuing the marital property, the trial court erred in using a percentage of gross income method to determine the goodwill value of the husband's psychiatric practice. The husband argues that the trial court should have adopted his expert's method of goodwill valuation, which was based on a capitalization

of excess earnings. We find that there is no single, acceptable method of goodwill valuation of a professional practice and that under the facts presented here, the trial court's use of a percentage of gross income method was not error.

At the equitable distribution hearing in this case, the husband presented testimony from Samuel L. Derieux, a certified public accountant with experience in valuing medical practices for purchase and sale. Derieux testified that the husband's medical practice had a value of $10,000. He based this on the value of the husband's accounts receivable and his office furniture. Derieux testified that the husband could earn approximately $70,000 in the marketplace as an employee. He further testified that the husband's practice had no excess income because his gross earnings in the practice, minus his expenses, did not exceed what he could earn in the marketplace. Derieux concluded that the husband's practice had no goodwill value because: (1) the husband showed no earnings in excess of standard earning capacity; (2) the transferability of patients was low; and (3) the husband had no intact organization to assure continuity of the medical practice.

The wife's expert was William K. Stephens, II, a certified public accountant, who also had experience in the valuation of medical practices for purchase and sale. Stephens testified that in valuing a medical practice, he considered the specialty, growth, referral base, location, possibility of patient retention, value of fixed assets, history of accounts receivable, value of goodwill, and general business management. He set the goodwill value of a medical practice within a range of twenty-five to fifty percent of one year's gross earnings. He testified that since psychiatry has a more definite flow of earnings than other medical specialities, the goodwill of a psychiatric practice should be valued at the upper end of this twenty-five to fifty percent scale. Based on the evidence that the husband's gross earnings were $100,000 per year, Stephens stated that the goodwill value of the husband's practice was between $40,000 and $50,000 because of the estimated continuity of patient visits over a period of time.

The trial court accepted Stephens' valuation method and determined that the husband's medical practice had a goodwill value of $40,000. The court found that the total value of the practice was $50,700.

Other evidence before the trial court showed that the parties were married for fourteen years prior to the wife obtaining a divorce in June 1984, on grounds of the husband's desertion. The husband began practicing psychiatry in 1978. At the time of the hearing, he had worked as a sole practitioner in Henrico County for five years. The evidence further showed that he specializes in psychoanalytic psychiatry, which involves intensive, long-term treatment of patients. He sees each of his approximate caseload of thirty patients two to three times per week for a period of between three and ten years. He has no employees and does his own scheduling, office billing and bookkeeping.

The trial court also received evidence that the husband billed patients at the rate of $60 per hour. There was additional evidence that the customary billing rate at that time for psychiatric practitioners was $75 per hour. For each of the five years preceding the hearing in this matter, the husband's gross annual income was approximately $100,000. At the time of the hearing, he had accounts receivable of $4,000 and a small amount of office furniture valued at approximately $7,500.

During the parties' marriage, the wife worked in various jobs as a registered nurse. She held both full time and part time jobs during the course of the marriage. At the time of the hearing, she was employed at the Department of Mental Health and Metal Retardation in Richmond. The parties have two children, who were ages twelve and eight at the time of the hearing.

In determining the value of the parties' marital property, the trial court found that the value of the equity in the marital home was $58,000, and the value of the furniture was approximately $19,000, not including a piano which was valued at $6,000. The only figure in dispute at the evidentiary hearing was the value of the business goodwill of Dr. Russell's medical practice.

After hearing the testimony regarding the goodwill value of the husband's practice, the trial court adopted the methodology employed by the wife's expert, which was based on a percentage of one year's gross income. The court found that under the evidence presented, this method was more appropriate than the capitalization of excess earnings method used by the husband's expert. Based on the evidence that the husband billed only about thirty-five hours per week, spent three afternoons per week receiving

psychoanalysis in Washington, D.C., and charged his patients $60 per hour when the general prevailing rate was $75 per hour, the trial court found that the husband intentionally kept the earnings from his practice at an artificially low level. The court further found that the husband could substantially raise the profits from his practice if he chose to do so. For these reasons, the court concluded that the capitalization of excess earnings method, which is based on the difference between what the husband earned, after expenses, and what he could earn if he went out into the marketplace as an employee, was not an appropriate method to be applied in this case.

The husband's sole argument on appeal is that the trial court erred in using the percentage of gross income method to determine the goodwill value of his medical practice. He argues that use of the percentage of gross income method was improper because it failed to distinguish between earning capacity and goodwill. He asserts that, instead, goodwill must be valued by determining excess earnings. The husband's expert testified that this calculation is made by taking the amount of gross income minus expenses of operations, and then subtracting the amount the professional could earn as an employee. If a positive balance results, there are excess earnings which, when capitalized over the number of years the purchaser would be willing to pay in advance for goodwill value, yield the goodwill value of the business or profession. The husband contends that the goodwill value of his psychiatric practice was zero because he could earn as much as an employee as he earned in his practice after expenses were subtracted from his gross income.

In response, the wife argues that there is no single, best approach to the valuation of goodwill in a professional practice. She asserts that the percentage of gross income method was properly chosen as the most appropriate method by her expert based on the particular characteristics of the the husband's practice, including its stream of earnings pattern and the high probability of patient retention.

■ Goodwill has been defined as "the increased value of the business, over and above the value of its assets, that results from the expectation of continued public patronage." Oldham, *Divorce, Separation and the Distribution of Property* § 10.03, at 10-20 (1989). The reputation of an individual, as well as his or her fu-

ture earning capacity, are not considered to be components of goodwill. *Id.*

A number of courts have refused to consider goodwill in valuing a professional practice, finding that such valuation is too speculative. *See, e.g., Nail v. Nail*, 486 S.W.2d 761, 764 (Tex. 1972); *Holbrook v. Holbrook*, 103 Wis. 2d 327, 350, 309 N.W.2d 343, 354 (1981). However, the majority of courts which have ruled on this subject have held that goodwill is an asset of a professional practice subject to valuation as marital property. *See, e.g., Dugan v. Dugan*, 92 N.J. 423, 433, 457 A.2d 1, 6 (1983); *Poore v. Poore*, 75 N.C. App. 414, 420-21, 331 S.E.2d 266, 271 (1985); *Heller v. Heller*, 672 S.W.2d 945, 948 (Ky. Ct. App. 1984); *Mueller v. Mueller*, 144 Cal. App. 2d 245, 250-51, 301 P.2d 90, 95 (1956). We find the majority view persuasive and hold that if the trial court determines from the greater weight of the evidence that a professional practice has goodwill value, that amount must be subject to valuation as part of the marital property. To hold otherwise would result in a windfall to the professional spouse. This would derive from the failure to consider part of the value of an asset already classified as marital property. We find that such a result would violate the statutory mandate that the value of all marital property be considered by the trial court in determining the appropriate amount, if any, of a monetary award. *See Rexrode v. Rexrode*, 1 Va. App. 385, 394, 339 S.E.2d 544, 550 (1986). However, we also recognize that under the facts of a given case, a professional practice may have no goodwill value.

We turn now to consider whether the trial court erred in computing the goodwill value of the husband's medical practice. Several methods of goodwill valuation have been recognized by the courts. *See* L. Golden, *The Equitable Distribution of Property* § 7.11, at 221 (1983); Oldham, *supra* § 10.03, at 10-21, 22. The capitalization of excess earnings method and the percentage of gross income method, employed by the opposing experts in the case before us, are two such methods. Another frequently used method is the market value method whereby the value of goodwill is determined by computing the difference between the price a business would sell for, and the value of its non-goodwill assets. Other methods of valuation address buyout provisions frequently contained in professional practice agreements. *Id.*

■ As stated in *Dugan v. Dugan*, 92 N.J. at 435, 457 A.2d at 7, "[g]oodwill should be valued with great care, for the individual practitioner will be forced to pay the ex-spouse 'tangible' dollars for an intangible asset at a value concededly arrived at on the basis of some uncertain elements." Further, particular care must be given that future earnings capacity and reputation not be confused with professional goodwill.

■ We adopt the view that there are a number of acceptable methods of computing the goodwill value of a professional practice, and that no single method is to be preferred as a matter of law. *Poore v. Poore*, 75 N.C. App. at 421-22, 331 S.E.2d at 271; *Wisner v. Wisner*, 129 Ariz. 333, 338, 631 P.2d 115, 120 (1981); *Hurley v. Hurley*, 94 N.M. 641, 644, 615 P.2d 256, 259 (1980); *In re Marriage of Goger*, 27 Or. App. 729, 732, 557 P.2d 46, 47 (1976). In determining the goodwill value, if any, of a professional practice, the trial court should specify which method of valuation it decides to use based on the expert testimony and the facts presented in the case.

■ In examining the trial court's valuation of goodwill, we adopt the standard of review set forth in *Poore v. Poore*. There, the court held that, on appeal, the trial court's valuation of goodwill will not be disturbed if it appears that the court made a reasonable approximation of the goodwill value, if any, of the professional practice based on competent evidence and the use of a sound method supported by that evidence. *Poore*, 75 N.C. App. at 422, 331 S.E.2d at 272.

In the case before us, the trial court found that the husband's practice had a goodwill value of $40,000 based on its use of the percentage of gross income method advanced by the wife's expert. We find that in employing this method, the trial court reasonably approximated the goodwill value of the husband's practice. Further, we find that it based its valuation on competent evidence and the use of a method that was sound under the facts presented. In its letter opinion, the trial court gave a detailed analysis of the evidence in the record and its reasons for using the percentage of gross income method. The evidence showed that the husband charged an hourly rate of $15 per hour less than the generally prevailing rate and billed only 35 hours per week, while using three afternoons per week to receive psychoanalysis in Washington, D.C. Based on these facts, the trial court concluded that the

percentage of gross income method was more appropriate than the capitalization of excess earnings method propounded by the husband's expert. The court chose the percentage of gross income method based on its finding that the husband had intentionally kept the earnings from his practice at an artificially low level, and that he could substantially raise the profits from his practice if he chose to do so. The trial court concluded that use of the capitalization of excess earnings method under the above evidence would have allowed the husband an unfair advantage because, by intentionally holding his income to a very low level, his practice would have no goodwill value.

The trial court's analysis here was based on the concept that where an individual's earning capacity exceeds his or her actual earnings, the court may consider this fact in determining the goodwill value of that person's business. We agree with this analysis. It is well settled that earning capacity may be considered by the trial court in awarding spousal and child support. *Payne v. Payne*, 5 Va. App. 359, 363, 363 S.E.2d 428, 430 (1987)(citing *Jacobs v. Jacobs*, 219 Va. 993, 995, 254 S.E.2d 56, 58 (1979)). We find that this principle applies equally to a determination of the goodwill value of a business in an equitable distribution proceeding. We apply this principle in order to insure that parties who work in businesses in which they own an interest will not be able to intentionally hold down their income and thereby subvert the process provided by Code § 20-107.3 for the valuation of that business interest after it has been classified as marital property.

Based on the evidence before the trial court, and its factual findings arising therefrom, we find that the percentage of gross income method was a sound method for the trial court to employ in determining the goodwill value of the husband's medical practice. Accordingly, we affirm the decision of the trial court.

*Affirmed.*

Barrow, J., and Coleman, J., concurred.